UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROQUE JACINTO FERNANDEZ, acting
on behalf of minor children,
C.R.F.B. and R.J.F.B.,

      Petitioner,

v.                                    Case No. 8:16-cv-2444-T-33TGW

CHRISTY NICOLE BAILEY,

      Respondent.

_____/

**ORDER GRANTING TEMPORARY RESTRAINING ORDER UNDER THE HAGUE CONVENTION**

This cause comes before the Court pursuant to Petitioner Roque Jacinto Fernandez's Verified Petition for Return of Children to Panama and for Issuance of Show Cause Order (Doc. # 1), which was filed on August 24, 2016. Construing the Motion for Issuance of a Show Cause Order as a Motion for Temporary Restraining Order, the Court grants the Motion as set forth below.

**Discussion**

**A. Temporary Restraining Order**

On August 24, 2016, Petitioner filed a Verified Petition for Return of Children To Panama (Doc. # 1). Petitioner, the father of the children, claims that Respondent, the mother of the children, has absconded to Florida with their eight-year

1

old twin sons as of March 20, 2013. (Doc. # 1 at ¶ 1-2). This is the second time that the Respondent has removed the children to the United States from Panama. Respondent returned the children to Panama only after a United States District Court in the Eastern District of Missouri ordered her to do so in September 2010. (Id. at ¶ 3).

The Petition does not provide information regarding all the relevant timeframes and is lacking in detail regarding the whereabouts of the children throughout the periods between the children's return to Panama in 2010, their abduction in March, 2013, and their flight out of Panama in February, 2014. Petitioner alleges that the children resided with him in Panama City, Panama, up until February 20, 2013. (Id. at ¶ 42). However, he does not state the time at which the children began living with him or where the children lived between their leaving Petitioner's residence on February 20, 2013, and their abduction on March 20, 2013. Also, Petitioner does not provide information regarding the whereabouts of the children or his efforts to recover the children between their abduction on March 20, 2013, and their February 2, 2014, flight from Panama to Tampa, Florida. (Id. at 42). This information will need to be provided to the Court at the evidentiary hearing set by this Order.

2

Petitioner and Respondent are unmarried but Petitioner's name appears on the children's birth certificates. (Id. at ¶¶ 8, 11). Petitioner commenced paternity and custody proceedings on February 7, 2013, in the First Children and Adolescence Court of Panama City, First Judicial Circuit of Panama. (Id. at ¶ 42). During the pending custody proceedings, Petitioner was granted visitation rights with the children, which were in effect at the time of children's removal on March 20, 2013. (Id.). However, while Petitioner alleges he held visitation rights as a result of the early February custody proceedings, he previously stated that the children lived in his home with him "up until February 20, 2013." (Id.). Further clarification regarding the extent of Petitioner's custody rights and the children's living situation will need to be provided to the Court at the evidentiary hearing.

Petitioner maintains that the delay in bringing this action was a result of the Respondent's concealment of the children's location from Petitioner through the use of aliases and frequent relocations across the state (Id. at ¶ 26). The United States Department of State has provided Petitioner with information regarding the location of the

3

children, with their most recent location being Tampa, Florida. (Id.)

Petitioner maintains that the Convention on the Civil Aspects of International Child Abduction, Done at the Hague on October 20, 1980 and the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq.*, apply to this situation. Petitioner requests that the Court enter a Show Cause Order (1) commanding the Respondent to appear with the Children in this Court to show cause why the Children should not be returned to Panama, and (2) prohibiting the removal of the children from the jurisdiction of this Court pending the resolution of this Petition and taking into safe-keeping the children's passports and travel documents. (Doc. # 1 at 12). The Court construes Petitioner's request as a Motion for Temporary Restraining Order barring Respondent from leaving the Court's jurisdiction with the children until a hearing can take place on his Verified Petition to return the children to Panama.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may enter a preliminary injunction or temporary restraining order. To obtain a temporary restraining order, the movant must demonstrate "(1) a substantial likelihood of success on the merits; (2)

4

irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." Schiavo v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

To obtain ex parte relief, a party must strictly comply with these requirements. See Emerging Vision, Inc. v. Glachman, No. 10-80734, 2010 U.S. Dist. LEXIS 81165 (S.D. Fla. June 29, 2010); Levine v. Comcoa Ltd., 70 F.3d 1191, 1194 (11th Cir. 1995)("An ex parte temporary restraining order is an extreme remedy to be used only with the utmost caution.").

Based on the record, the Court preliminarily finds that Petitioner will suffer irreparable harm unless this Order is granted. On a previous occasion, Respondent wrongfully removed the children to the Unites States from Panama and refused to return them. Respondent returned the children to Panama only after a United States District Court in the Eastern District of Missouri ordered her to do so in September 2010. (Doc. # 1 at ¶ 3). Given that Respondent again has removed the children from Panama, and has refused to return the children from Florida to Panama, there exists a clear risk that Respondent will further secret the children and

5

herself in violation of the Hague Convention, the ICARA, and other applicable law. Morgan v. Morgan, 289 F. Supp. 2d 1067, 1070 (N.D. Iowa 2003)(finding irreparable harm would occur without a TRO issued *ex parte* because the Respondent would "likely flee this jurisdiction with the child" otherwise).

According to the Petition, Petitioner has rights of custody with the children, as he holds a *ne exea* right to prevent his children from leaving the country. (Doc. # 1 at ¶ 34); see Abbott v. Abbott, 560 U.S. 1 (2010)(holding that a parent's *ne exea* right is a "right to custody" under the Hague Convention). Petitioner alleges that he was actually exercising his rights of custody at the time of the wrongful removal. (Doc. # 1 at ¶ 35). The children are citizens of Panama. (Id. at ¶ 7). Excepting the period of Respondent's previous wrongful removal of the children, Petitioner alleges Panama has been the habitual place of residence for the children. (Id. at ¶ 33). An evidentiary hearing is often needed to determine a child's habitual residence through a fact-specific inquiry that begins with the intent of the person "entitled to fix the place of the child's residence." Ruiz v. Tenorio, 392 F.3d 1247, 1253-54 (11th Cir. 2004); Gitter v. Gitter, 396 F.3d 124, 132 (2d Cir. 2005)(finding

6

that "the parent's intent to fix a child's residence is 'a question of fact to which we defer to the district court'")

Petitioner alleges that Respondent wrongfully removed the children to Florida, without Petitioner's consent and Respondent has prevented Petitioner from seeing his children. (Id. at ¶¶ 36, 37). The Court preliminarily finds that these allegations establish a prima facie claim of wrongful removal under Article 3 of the Hague Convention.

However, Petitioner brought this action more than three years after Respondent removed the children from him. Where a child has been wrongfully removed, the judicial authority shall order the return of the child if a period of less than one year has elapsed from the date of the wrongful removal or retention to the commencement of the proceedings. Hague Convention, art. 12. This one year period is not subject to equitable tolling. Lozano v. Montoya Alvarez, 134 S. Ct. 1224, 1236, 188 L. Ed. 2d 200 (2014). Nevertheless, Article 12 provides for the return of a wrongfully removed child after the one year period has elapsed "unless it is demonstrated that the child is now settled in its new environment."

The "well-settled" exception exists to serve the interests of the child in settlement rather than to alter the rights of either parent. Lozano, 134 S. Ct. at 1234 ("Rather

than establishing any certainty about the respective rights of the parties, the expiration of the 1-year period opens the door to consideration of a third party's interests, i.e., the child's interest in settlement"). However, the Court remains free to consider whether the child's interest in remaining in the new country is outweighed by other interests of the child and the non-abducting parent, including "the child's interest in returning to his or her original country of residence...the child's need for contact with the non-abducting parent...the non-abducting parent's interest in exercising the custody to which he or she is legally entitled; the need to discourage inequitable conduct (such as concealment) by abducting parents; and the need to deter international abductions generally." <u>Id.</u> at 1237.

Determining whether a child is settled is a fact-specific inquiry. Being "well-settled" means "more than having a comfortable material existence." <u>Lops v. Lops</u>, 140 F.3d 927, 946 (11th Cir. 1998). A court looks at a number of relevant factors including the circumstances surrounding the children's living environment, the involvement of the abducting parent, the active measures taken to conceal the children's whereabouts, and the possibility of prosecution for conduct taken to take or conceal the children. <u>Id.</u>

8

Concealment is a factor that may be taken into account because concealment tactics may preclude a child from forming stable attachments. Id. at 1236 (Alito, J., concurring); see also Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347, 1363–1364 (M.D. Fla. 2002)(children not settled when they "lived in seven different locations" in 18 months); Wigley v. Hares, 82 So. 3d 932, 942 (Fla. 4th DCA 2011)("The mother purposely kept him out of all community activities, sports, and even church to avoid detection by the father"). Petitioner alleges that between July, 2015, and December, 2015, the Respondent and children resided in three different cities across Florida with Respondent adopting aliases to facilitate concealment. (Doc. # 1 at ¶ 26). These allegations reduce the likelihood that the children have become "settled" in Florida as a result of the extended time between their removal and the commencement of proceedings in this Court.

Article 13 also permits the Court to refuse to order the return of the children if the children "object[] to being returned and [have] attained an age and degree of maturity at which it is appropriate to take account of [their] views." See Hague Convention, art. 13. It bears emphasis that the Convention merely calls for a court to "take account of" a mature child's objection to return, not to accede to it

automatically. Further, "a court always retains discretion to order repatriation notwithstanding the applicability of any Hague Convention exception if that would best fulfill the purposes of the Convention." Haimdas v. Haimdas, 720 F. Supp. 2d 183, 204 (E.D.N.Y.), aff'd, 401 F. App'x 567 (2d Cir. 2010). Still, the fact that a sufficiently mature child objects to repatriation "may be conclusive"; in other words, a district court can decline to order return of a wrongfully retained or removed child on that ground alone. Blondin v. Dubois, 238 F.3d 153, 166 (2d Cir. 2001). However, in making its determination, a court should also consider whether a child's desire to remain or return to a place is "the product of undue influence," in which case the "child's wishes" should not be considered. De Silva v Pitts, 481 F.3d 1279, 1286 (10th Cir. 2007). The burden lies with Respondent to prove this exception applies by a preponderance of the evidence. 22 U.S.C. § 9003.

The Convention provides no specific age at which a child is deemed sufficiently mature and decisions applying this exception vary widely. Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 279 (3d Cir. 2007). Here, the children are eight years old — an age over which courts disagree regarding the age and maturity exception. After taking the child's

10

testimony, some courts have found children of a similar age to be sufficiently mature. See Blondin, 238 F.3d at 167 (affirming district court that took into account the objection of "a remarkably mature eight year old" girl in denying repatriation to France); Falk v. Sinclair, No. CIV. 09-346-P-S, 2009 WL 4110757, at *2 (D. Me. Nov. 23, 2009)("There is ample precedent for the taking of testimony from a child of the same approximate age as these children, on the basis of which the questions of the child's maturity, and any weight to be given to his or her testimony, then are decided."); Anderson v. Acree, 250 F. Supp. 2d 876, 882–84 (S.D. Ohio 2002)(considering, but not relying solely on, the views of an eight year old who was composed, calmly and readily answered questions, pointed to New Zealand on a globe, and indicated her understanding of the difference between truth and falsehood and of her obligation to tell the truth in reaching decision not to repatriate her); Mendez Lynch, 220 F. Supp. 2d 1347, 1362 (M.D. Fla. 2002)(after taking testimony from nine-year-old, court concluded that he was sufficiently mature to take his views into account, but exercised discretion to repatriate child despite those views).

Other courts have found eight year olds and even older children are not mature enough for their objections to be considered. Simcox v. Simcox, 511 F.3d 594, 604 (6th Cir. 2007)(after taking testimony from "preoccupied, disinterested and detached" eight-year-old, lower court concluded that he was not sufficiently mature to take his views into consideration); Haimdas, 720 F. Supp. 2d at 208 ("[child who was nearly ten years old] sees this as a choice of which parent he wants to live with, not which country he wants to grow up in; his stated preference to remain in New York is not a particularized, mature objection that should be part of the Court's Hague Convention analysis."); Hirst v. Tiberghien, 947 F. Supp. 2d 578, 598 (D.S.C. 2013)(declining to apply the age and maturity exception where neither the ten year old or eleven year old child "seem[ed] to be especially sophisticated or to have reached a maturity beyond their years"); Tahan v. Duquette, 259 N.J. Super. 328, 335, 613 A.2d 486, 490 (1992)(holding, without discussion, that the exception "simply does not apply to a nine-year-old child").

The fact-specific nature of numerous issues in this case necessitates an evidentiary hearing. Nevertheless, at the Temporary Restraining Order stage, the Court finds that Petitioner has shown that there is a substantial likelihood

of success on the merits given his preliminary establishment of a prima facie case, the prior wrongful removal by Respondent, and the concealment tactics purportedly used by Respondent that would undermine a "well-settled" affirmative defense.

In addition, the Court finds that the threatened injury outweighs any harm the relief would inflict on Respondent, because this Temporary Restraining Order simply maintains the status quo. That is, this Order does not address whether either party should have access to or custody over the children on a continuing basis. Instead, and as specified below, this Order requires Respondent to remain in this district with the children until a hearing on the merits of the Verified Petition can take place. Finally, the Court determines that the issuance of this Temporary Restraining Order will serve the public interest.

The Court will hold an evidentiary hearing on September 12, 2016, at 1:30 P.M. to evaluate the merits of the Verified Petition. Respondent is required to produce the children at this hearing. The Court sets the hearing for this date due to the requirement that international child abduction cases be decided as rapidly as possible. "The convention is intended as a rapid remedy for the left-behind parent." Ruiz, 392 F.3d

13

at 1250. Specifically, the Hague Convention provides a six week window for the adjudication of such cases.

B. **Other Relief Requested**

The Verified Petition requests various additional relief. (Doc. # 1 at 12-13). First, Petitioner requests that the Court include a provision in its Temporary Restraining Order requiring the United States Marshals Service to serve the Order and all pleadings and papers filed in this case. Although the Court acknowledges Petitioner's claim that he "has incurred substantial expenses" in his efforts to retrieve the children, the Court declines to include such a provision. (Id. at ¶ 44). Petitioner is responsible for serving Respondent and must file proof of service once service on Respondent has been effected.

Next, should the Respondent fail to appear pursuant to the Court's Temporary Restraining Order, Petitioner requests that this Court issue an Order directing that the names of the children be entered into missing persons section of the national police computer system (N.C.I.C.) and that an arrest warrant be issued for the Respondent. Petitioner then requests the Court enter an Order directing the prompt return of the children to Panama for the Panamanian courts to make any and all custody determinations. Finally, Petitioner

14

requests that the Court order the Respondent to pay the Petitioner's reasonable legal costs, fees and expenses of effectuating the children's return to Panama. These requests must wait until the Court has held its hearing on the merits of the Verified Petition.

## Conclusion

The Court having considered the pleadings and Motion in this case, and pursuant to Federal Rule of Civil Procedure 65, **GRANTS** the construed Motion for a Temporary Restraining Order as follows:

(1) Respondent is hereby prohibited from removing the children from the jurisdiction of this Court pending a hearing on the merits of the Verified Complaint, and no person acting in concert or participating with Respondent shall take any action to remove the children from the jurisdiction of this Court pending a determination on the merits of the Verified Petition for Return of Children to Panama.

(2) Respondent is hereby directed to show cause, on **September 12, 2016, at 1:30 P.M.**, in Courtroom 14B of the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602, why the children should not be returned forthwith to Panama, and why the other relief requested in the Verified Petition should not be granted. To facilitate

adjudication of this case within the six week period set by

the Hague Convention, Respondent is directed to bring the

children to this hearing.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

25th day of August, 2016.


_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE